OPINION
{¶ 1} Wiley Currence, the natural father of Jermani Downing, appeals a judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, which granted legal custody of Jermani to her maternal cousin. Appellant assigns two errors to the trial court:
 {¶ 2} "I. THE COURT'S ORDER STATING THAT JERMANI DOWNING COULD NOT BE PLACED WITH ANY BIOLOGICAL PARENT AT THE TIME OF TRIAL OR WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 3} "II. THE COURT'S ORDER STATING THAT IT WOULD BE IN THE BEST INTERESTS OF JERMANI DOWNING THAT A CHANGE OF LEGAL CUSTODY BE GRANTED TO MATERNAL COUSIN LAQUANDA CROSS WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 4} The record indicates Jermani Downing was born on October 19, 2003. On November 3, 2003, appellee Stark County Department of Job and Family Services filed a complaint alleging Jermani was dependent and/or neglected. Jermani's mother, who is not a party to this appeal, and appellant stipulated to a finding of dependency on November 26, 2003. At the time, appellant had not established paternity of the child, and it appears he did not reside with the child's mother.
 {¶ 5} Originally, Jermani remained in her mother's home under an order of protective supervision with certain conditions. On August 24, 2004, appellee removed Jermani from the mother's home because she had violated one of the conditions. Appellant was not involved.
 {¶ 6} The trial court found by the end of September, 2004, appellant had not yet established paternity, and was not involved with the child or appellee. The court found appellant had gone for extended periods of time without visiting the child. After removal from her mother's home, the child was placed with her maternal aunt, Laquanda Cross, where she remained during the pendency of the case.
 {¶ 7} The trial court found appellant's case plan required him to complete a psychological evaluation and follow any recommendations. The court found appellant completed his psychological evaluation approximately one year after it was ordered. The court found appellant had failed to comply with the recommendations of the evaluation, including attending parenting instruction and individual counseling. The court found appellant's intellectual ability was below the average range for the general population, and his psychological evaluation stated he had difficulty in problem solving, exercising judgment, and setting structure and limits for a child.
 {¶ 8} Appellant testified he did not presently have furnishings for a child, but could get them with the assistance of others. The court denied appellant's proposal for a Schedule A visitation because he had not completed the requirements of his case plan. The trial court found the child is healthy, happy, and bonded with the family in the relative's home, and a grant of legal custody to Cross is in the best interest of the child.
 I {¶ 9} In his first assignment of error, appellant urges the trial court's finding the child could not be placed with either biological parent within a reasonable time was against the manifest weight and sufficiency of the evidence.
 {¶ 10} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with a parent, the court must consider the factors set forth in R.C. 2151.414 (E). The factors are:
 {¶ 11} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 12} (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code; * * *
 {¶ 13} (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * *
 {¶ 14} (16) Any other factor the court considers relevant."
 {¶ 15} While appellant correctly states he was not involved in the problems that initially caused his daughter to be removed from the home, the court found appellant had not complied with the some of the court's orders regarding his daughter, or had complied slowly. Appellant asserts during the pendency of the appeal, he did complete the parenting class, but this court cannot consider information outside the record. Although appellant conceded he was not prepared to have his daughter reside with him, he testified he would be able to promptly get a two-bedroom apartment and the furnishings Jermani would need.
 {¶ 16} Appellant's mother testified if need be, he and Jermani could move in with her, because she had more than adequate space for both of them. She testified she would be able to guide him in parenting, and would be available to babysit.
 {¶ 17} The court found appellant had gone extended periods of time without visiting his daughter. Appellant testified he had made many attempts to contact Laquanda Cross, but she did not cooperate in setting up visits for him.
 {¶ 18} In the recent case of In Re: C.R.,108 Ohio St. 3d 369, 2006-Ohio-1191, the Ohio Supreme Court found when a juvenile court has adjudicated a child to be abused, neglected, or dependent, it is implicit the parent is unsuitable. The juvenile court need not make an additional, separate finding the parents are unsuitable before awarding legal custody to a non-parent.
 {¶ 19} This court may not weigh the evidence nor judge the credibility of the witnesses, but rather, we must determine whether there is relevant, competent and credible evidence upon which the fact finder can base its judgment, In the Matter of:Mercedes Jones, Guernsey App. No. 06CA9, 2006-Ohio-3363, citations deleted. If this court finds the judgment is supported by competent and credible evidence which goes to all the essential elements of the case, we may not reverse as being against the manifest weight of the evidence, C.E. Morris v.Foley Construction Company (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578. The Supreme Court has defined "clear and convincing evidence" as the degree of proof that will produce in the mind of the trier of fact a firm belief in the allegations sought to be established. It is more than a preponderance of the evidence but does not rise to the criminal standard of beyond a reasonable doubt, In Re: Estate of Haynes (1986), 25 Ohio St. 3d 101,495 N.E. 2d 23. We must defer to the trial court on issues relating to the credibility of the witnesses and the weight to be given to the evidence, Seasons Coal Company v. Cleveland (1984),10 Ohio St. 3d 77, 461 N.E. 2d 1273.
 {¶ 20} We have reviewed the record, and we find there is sufficient competent and credible evidence from which the trial court could conclude by clear and convincing evidence the child could not be placed with either of her parents within a reasonable time. Accordingly, the first assignment of error is overruled.
 II. {¶ 21} In his second assignment of error, appellant argues the trial court's determination it was in Jermani's best interest to grant legal custody to her maternal cousin Laquanda Cross is against the manifest weight and sufficiency of the evidence.
 {¶ 22} In the case of In Re: Mauzy Children (November 13, 2000), Stark App. No. 2000CA244, this court found a juvenile court's determination regarding the best interest of the child must be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of all concerned. The focus must be on the child, not the parent, In the Matter of: Teuila Kyler-Lother, Tuscarawas App. No. 2006AP010005, 2006-Ohio-4836.
 {¶ 23} The Revised Code sets forth the factors a trial court should consider in determining the best interest of a child in R.C. 2151.414 (D). The factors are:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} The trial court found Jermani had bonded with Ms. Cross and the other children in the home. The court found she is healthy and happy.
 {¶ 30} We have reviewed the record, and we find the trial court's determination it was in Jermani's best interest to be placed in the legal custody of her maternal cousin is supported by clear and convincing evidence.
 {¶ 31} The second assignment of error is overruled.
 {¶ 32} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed.
By Gwin, J., and Wise, P.J., concur; Hoffman, J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed. Costs to appellant.