[Cite as *Spurrier v. Lake Cty. Dog Warden*, 2018-Ohio-4663.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| DR. ANN M. SPURRIER, | : | **O P I N I O N** |
| Petitioner-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-L-026** |
| LAKE COUNTY DOG WARDEN, | : | |
| Respondent-Appellee. | : | |

Civil Appeal from the Painesville Municipal Court, Case No. 2017 CVH 00767.

Judgment: Affirmed.

*Matthew C. Bangerter,* P.O. Box 148, Mentor, OH 44061 (For Petitioner-Appellant).

*Charles E. Coulson,* Lake County Prosecutor; *Harrison L. Crumrine* and *Jason R. Shachner,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Respondent-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Dr. Ann M. Spurrier, appeals from the judgment of the Painesville Municipal Court, adopting the magistrate's decision and affirming the designation of her dog as a "dangerous dog." We affirm the municipal court's judgment for the reasons that follow.

{¶2} On May 9, 2017, appellee, the Lake County Dog Warden, designated appellant's dog, an Alaskan Malamute named "Snow," a "dangerous dog," pursuant to

R.C. 955.11. The designation was given to Snow after she killed another dog, a Dachsund named "Bella," owned by Dr. Spurrier's neighbors, Robert and Donna Raines.

{¶3} An owner of a "dangerous dog" must comply with certain requirements found in R.C. 955.11, R.C. 955.22, and R.C. 955.54, which set forth, inter alia, procedures relating to confining, tethering, registering, and neutering the dog, transferring ownership of the dog, and obtaining liability insurance. A dog owner who disagrees with the designation of their dog as "dangerous" may request a hearing with the municipal or county court that has territorial jurisdiction over the owner. R.C. 955.222(C). At the hearing, the person who designated the dog a "dangerous dog" has the burden of proving, by clear and convincing evidence, that the dog is "dangerous." *Id.*

{¶4} Dr. Spurrier objected to the designation and requested a hearing, pursuant to R.C. 955.222(C). A hearing was held before the magistrate in the municipal court on October 18, 2017. The magistrate issued findings of fact and conclusions of law on November 3, 2017, affirming the designation of Snow as a "dangerous dog." By judgment entry filed that same day, the trial court adopted and affirmed the magistrate's decision. Dr. Spurrier filed objections to the magistrate's decision, which the trial court overruled on January 8, 2018.

{¶5} Dr. Spurrier noticed a timely appeal, assigning the following errors for our review:

> [1.] The trial court abused its discretion by affirming and adopting the magistrate's decision designating appellant's dog a "dangerous dog."
>
> [2.] The trial court erred by improperly shifting the burden of proof onto the petitioner.

**{¶6}** Dr. Spurrier contends the trial court erred when it adopted the magistrate's decision affirming Snow's designation as a "dangerous dog." In her first assignment of error, Dr. Spurrier asserts the Dog Warden did not satisfy its burden of proof; her arguments essentially challenge the magistrate's determination as being against the manifest weight of the evidence.

**{¶7}** When a judgment is challenged as being against the weight of the evidence, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether, in resolving evidentiary conflicts, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶8}** "Consequently, when reviewing the weight of the evidence, our analysis must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which in this instance is by clear and convincing evidence." *Henry Cty. Dog Warden v. Henry Cty. Humane Soc.,* 3d Dist. Henry No. 7-16-06, 2016-Ohio-7541, ¶14, citing *Eastley, supra,* at ¶19. "Clear and convincing" does not mean "clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986). "Clear and convincing is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere

preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases." *Id.*

{¶9} "Dangerous dog" is defined in R.C. 955.11(A)(1)(a), in relevant part, as "a dog that, *without provocation*, * * * has done any of the following: (i) Caused injury, other than killing or serious injury, to any person; (ii) Killed another dog; (iii) Been the subject of a third or subsequent violation of [R.C. 955.22(C)]." (Emphasis added.) "'Without provocation' means that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7).

{¶10} At the hearing before the magistrate, the Dog Warden presented the testimony of Robert and Donna Raines, and Dr. Spurrier testified in her own behalf. Mr. and Mrs. Raines live next door to Dr. Spurrier and were the owners of Bella.

{¶11} Mr. and Mrs. Raines testified that they were outside prior to the altercation. Mr. Raines was using the weed trimmer, and Bella was sitting on Mrs. Raines' lap while she mowed the lawn on the riding lawnmower. Mrs. Raines then went inside, and Bella and Mr. Raines remained outside. Mr. Raines testified that he witnessed the entire event. He first noticed Snow coming from underneath the pasture area for his horses, then he saw Snow coming towards them, and Bella barked several times. Mr. Raines then saw Bella run toward the back of their house with Snow in pursuit. Bella stopped running in front of their back porch and rolled over onto her back in a submissive position. Snow grabbed Bella "around the middle" and shook her for a minute or so. When Snow released her, Dr. Spurrier pulled Snow away; blood was "spurting" from Bella's chest. Mr.

4

and Mrs. Raines heard Dr. Spurrier yell to her husband that Snow had just killed the neighbors' dog. Bella died within minutes thereafter.

{¶12} Dr. Spurrier testified that Snow was on her property but not on a leash just prior to the incident. Snow escaped her pen and went under the fence to the horse corral on the Raines' property. Dr. Spurrier went over to her, and Snow was coming toward Dr. Spurrier when Mr. Raines and Bella came around the horse barn. Bella started barking and charged toward Snow. Snow looked at Dr. Spurrier and then looked back at Bella. Snow then chased after Bella, who ran toward the Raines' house. She testified the dogs made contact and fought, "tussling" across the yard. When they ended up near the Raines' deck, approximately 20 feet from where they first made contact, Bella laid down. Dr. Spurrier commanded Snow to stop approximately three or four times; Snow did not obey until after the fight was over.

{¶13} When asked if she had previously encountered Bella, Dr. Spurrier testified that Bella would run toward her when she was out walking in the morning, but Bella never left the Raines' yard. She has never known Snow to chase after Bella or any other animals in the neighborhood. Dr. Spurrier testified that Snow is a purebred Alaskan Malamute that has received various obedience and temperament certificates, is certified as a therapy dog, and has received training on how to control her protective instincts. She testified Snow is a show dog and will not be permitted to compete in Ohio with a "dangerous dog" designation.

{¶14} On appeal, Dr. Spurrier argues the witness testimony failed to establish by clear and convincing evidence that Snow acted "without provocation," specifically, that Snow was not coming to Dr. Spurrier's aid or defense when Snow killed Bella. Dr.

Spurrier contends the Dog Warden failed to satisfy its burden of proof because her own testimony was more credible than the Raines' testimony.

**{¶15}** As an appellate court is not in a position to observe the witnesses' demeanor, gestures, and voice inflections for the purpose of weighing the credibility of their testimony, we must give substantial deference to the factfinder's determinations of credibility. *State v. Leasock*, 11th Dist. Trumbull No. 2017-T-0072, 2018-Ohio-1774, ¶17, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (internal citation omitted); *see also Henry Cty., supra*, at ¶16. "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Montgomery Cty. Animal Resource Ctr. v. Johnson*, 2d Dist. Montgomery No. 27110, 2017-Ohio-7939, ¶14.

**{¶16}** Upon review, we do not conclude the magistrate lost its way or created a manifest miscarriage of justice in affirming the Dog Warden's designation. We note that some of the testimony about Snow's temperament, upon which Dr. Spurrier relies on appeal, received objections from the prosecutor, which were sustained by the magistrate. Further, the magistrate was entitled to give the testimony such weight as it deemed proper. Accordingly, giving due deference to the magistrate's determination of witness credibility, the record establishes that Snow was not coming to Dr. Spurrier's aid or defense when Snow killed Bella. Snow's designation as a "dangerous dog" under R.C. 955.11(A)(1)(a) is not against the manifest weight of the evidence.

**{¶17}** Dr. Spurrier's first assignment of error is without merit.

**{¶18}** In her second assignment of error, Dr. Spurrier contends the trial court erred by adopting a magistrate's decision that improperly shifted onto her the burden of proving an essential element.

**{¶19}** Again, as is relevant here, "dangerous dog" is defined as a dog that, without provocation, has killed another dog; "without provocation" meaning, in part, "that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(1)(a)(ii); R.C. 955.11(A)(7).

**{¶20}** In the magistrate's decision, it is stated that "Petitioner has failed to establish by clear and convincing evidence that Snow was coming to the aid or defense of Petitioner." We agree this is a misstatement of the burden of proof, as the statute clearly directs that "the person who designated the dog as a * * * dangerous dog * * * has the burden of proving, by clear and convincing evidence, that the dog is a * * * dangerous dog[.]" R.C. 955.222(C). In context of the entire decision, however, it is clear the magistrate correctly allocated the burden of proof. The magistrate ultimately concluded, "Respondent has proven by clear and convincing evidence that Snow killed another dog without provocation, and, therefore, the designation of 'dangerous dog' stands."

**{¶21}** A review of the hearing transcript also reveals the magistrate understood the prosecutor, on behalf of the Dog Warden, had the burden of proof in this matter. During opening statements, Dr. Spurrier's counsel conceded that, "the State, I believe has the burden," and the prosecutor agreed. The prosecutor then presented its case first. During closing statements, the prosecutor acknowledged its burden of proof, and Dr.

7

Spurrier's counsel asserted the prosecutor had not satisfied the burden. Finally, the magistrate allowed the prosecutor a rebuttal, stating, "Since you have the burden."

{¶22} It is apparent, on the whole of the record, that the burden of proof was not shifted in this matter; further, as stated above, the Dog Warden in fact satisfied its burden. Therefore, although the magistrate's statement of which Dr. Spurrier complains was in error, it is not reversible error. *See Bostic v. Connor*, 37 Ohio St.3d 144, 149 (1988) (reversal is not warranted when an error is deemed harmless and no prejudice occurs); *see also* Civ.R. 61.

{¶23} Accordingly, we conclude the trial court did not err by adopting and affirming the magistrate's decision.

{¶24} Dr. Spurrier's second assignment of error is without merit.

{¶25} The judgment of the Painesville Municipal Court is hereby affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.

8